JOHN BURKE,                          )
                                     )
            Petitioner,              )        No. 11 C 06220
                                     )
      v.                             )
                                     )        Judge Edmond E. Chang
MARCUS HARDY,                        )
                                     )
            Respondent.              )


**MEMORANDUM OPINION AND ORDER**

Petitioner John Burke has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254,[1] challenging his 2003 conviction for armed robbery. R. 1, Habeas Pet. For the reasons that follow, his petition and a certificate of appealability are denied.[2]

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 2241.

[2]The Court also denies Burke's motion for counsel. R. 43. Counsel must be appointed in habeas proceedings only if an evidentiary hearing is needed or if the interests of justice so require. *See* Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts, *available at* http://www.uscourts.gov/uscourts/rules/2254-2255.pdf; 18 U.S.C. § 3006A(a)(2)(B). Neither circumstance applies here. As discussed below, the Court denies Burke's requests for an evidentiary hearing. And in light of the legal limitation on the record, Burke's competent ability to present the issues, and the clarity of the answers to his arguments, the interests of justice do not require appointment of counsel.

In a letter submitted with his current motion for counsel, Burke also asks the Court to explain its ruling on his earlier motions for counsel. *See* R. 44 ¶¶ 2-3, 5-7 (inquiring about the motions for counsel [R. 4; R. 5] that he filed in September 2011). The Court denied those motions on February 9, 2012, because the State had not answered and thus the motions were premature. *See* R. 8 at 2.

# I. Background

A federal habeas court presumes that the factual findings made by the last state court to decide the case on the merits are correct, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Burke has not rebutted this presumption, so the following sets forth the facts underlying Burke's state criminal conviction.

On September 29, 2001, at about 8:30 a.m., Petitioner John Burke robbed Kathleen Jordan at gunpoint. *People v. Burke*, No. 2-08-0135, slip op. at 2-3 (Ill. App. Ct. May 25, 2010), *available at* R. 18-2, State's Exh. B.[3] Jordan had just unlocked the front door of the Wheaton, Illinois Currency Exchange where she worked when Burke approached her from behind, put a gun to her head, and ordered her to "get in and open the fucking door." *Id.* at 2. Once inside the Currency Exchange, Burke pushed Jordan to the floor. *Id.* He then ordered her to get up and open the security door that separated the public lobby from the secured work area that only employees could access. *Id.* at 2-3. To access the secured work area, Jordan had to step into a small space behind the security door that was only large enough for one person. *Id.* at 3. Only after the security door closed behind her could she then access the secured work area. *Id.* On this particular morning, once Jordan opened the security door and stepped into the small space, Burke put his arm through the security doorway. *Id.* Jordan realized, however, that Burke could not get through the doorway, so she hit the alarm. *Id.* Through the bulletproof glass in

---

[3]This is the last state court opinion to fully lay out the facts of Burke's conviction.

the secured work area, Jordan saw Burke run into the lobby. *Id.* at 2-3. She then dropped to the floor and heard glass breaking. *Id.* at 3. When she next looked into the lobby, Burke was gone. *Id.* The police arrived at the scene about five minutes later. *Id.* By that point, Jordan had noticed that her purse was missing. *Id.*

Jordan described her assailant to the police as a fifty-year-old black man, wearing a maroon jacket, a white T-shirt, tan pants, and a floppy hat. *Id.* A short time later, the police told Jordan that they had a suspect in custody. *Id.* Jordan viewed the man, but she told the police that they had the wrong guy. *Id.* Before too long, the police asked Jordan to view yet another suspect. *Id.* Again, Jordan viewed the suspect, and again she told them that they still had not found her assailant. *Id.*

In the meanwhile, police recovered four fingerprints from the crime scene that were suitable for comparison. *Id.* One fingerprint, which was collected from the inside of the security door, belonged to Jordan. *Id.* The other three did not. *Id.* at 3-4. Leroy Keith, a DuPage County Crime Lab fingerprint expert, entered two of the three unidentified fingerprints into the FBI's Automated Fingerprint Identification System database. *Id.* The database identified Burke as a "'very good candidate as a suspect in th[e] investigation.'" *Id.* at 4 (alteration in original). Keith then independently confirmed that Burke's fingerprints matched the three unknown fingerprints from the crime scene. *Id.* Two of the fingerprints had been recovered from *inside* the security door. *Id.*

Based on the fingerprint analysis, the police asked Jordan to view a photographic lineup featuring Burke and five other men who had similar

appearances. *Id.* Jordan identified Burke as her assailant, stating, "That's him." *Id.* When the police officer asked Jordan if she was sure, she explained that she would "never forget his face." *Id.*

The State charged Burke with two counts of armed robbery: Count I under 720 ILCS 5/18-2(a)(1) and Count II under 720 ILCS 5/18-2(a)(2). *Id.* at 2. Subsections (a)(1) and (a)(2) are identical except that (a)(1) applies to robberies committed with "a dangerous weapon *other than* a firearm" and (a)(2) applies to robberies committed "*with* a firearm." 720 ILCS 5/18-2(a)(1), (a)(2) (emphasis added). Despite subsection (a)(1)'s application to robberies committed with a weapon *other than* a firearm, Count I of the indictment alleged that Burke violated (a)(1) by committing robbery "while armed with a dangerous weapon, *a gun.*" *People v. Burke*, 840 N.E.2d 281, 283 (Ill. App. Ct. 2005) (emphasis added), *available at* R. 18-1, State's Exh. A. Count II, which cited subsection (a)(2), simply alleged that Burke committed robbery "while armed with a firearm." *Id.*

The evidence that Burke brandished a firearm while robbing Jordan was "overwhelming and uncontested." *Id.* at 284. Nevertheless, shortly before concluding its case in chief and after introducing evidence about the nature of the gun, the State moved to dismiss Count II and proceeded solely on Count I. *Id.* at 283 (emphasis added). The State explained that it made this choice because "all the instructions [the State] drafted relate[d] to the dangerous weapon." *Id.*; *see also* R. 18-3, State's Exh. C, Jury Instructions at 13. Of course, the problem with this maneuver was that Count I (which explicitly alleged that Burke was armed with "a

dangerous weapon, a gun") cited subsection (a)(1), which only applies to armed robbery with a weapon *other than* a firearm. *Burke*, 840 N.E.2d at 383. Burke did not challenge the indictment at trial. *Id* at 384.

The jury found Burke guilty of armed robbery, and the trial court sentenced him to life imprisonment under Illinois's Habitual Criminal Act, 720 ILCS 5/33B-1(e) (West 2000), because Burke had two prior armed-robbery convictions. *Burke*, 840 N.E.2d at 282, 284-85. Burke's conviction and sentence were affirmed on direct appeal. *See id.* at 282, 284, 286.

Next, during post-conviction review, Burke alleged that his trial counsel was ineffective for (1) failing to investigate, prepare, and present an alibi defense; (2) failing to present evidence to rebut the State's fingerprint evidence that placed him at the crime scene; (3) failing to hire a fingerprint expert; and (4) failing to object when a police officer interrupted the trial and, in the jury's presence, removed a pistol from an evidence bag that was never admitted into evidence. *See* Appellant's Br. at 17, *People v. Burke*, No. 2-08-0135 (Ill. App. Ct. Aug. 5, 2009), *available at* R. 18-8, State's Exh. H. In support of his claims, Burke submitted three affidavits: one from himself and two from his wife, Avon Nesbitt. *Burke*, No. 2-08-0135, slip op. at 5. In his affidavit, Burke claimed that he gave $5,000 to his trial counsel to hire a fingerprint expert. *Id.* He also claimed that he told his trial counsel that Nesbitt's testimony was "imperative" and that she was "willing and ready" to testify about what they did together in their household on the morning of the robbery. *Id.* Finally, Burke also claimed that

During trial, [he, that is, Burke] observed the arresting officer from the unrelated Cook County case enter the courtroom with a large envelope. Upon being noticed by the Asst. State's Attorney (who was in the process of examining a witness) he requested a brief break from questioning the witness from the Court and walked directly over to the Chicago police officer, who then pulled a weapon from the envelope in plain view of the jurors sitting directly before them. [He] immediately brought this mishap to [trial counsel's] attention. [Trial counsel] replied '[D]on't worry, he can't get on the stand to testify.' [His] wife was sitting in the courtroom and observed this irregularity which is contained in her affidavit.

*Id.* at 5-6 (alterations in original).

In Burke's wife's first affidavit, Nesbitt confirmed that she was "able and willing to testify regarding [her] knowledge of [Burke's] whereabouts on the morning of September 29, 2001." *Id.* at 6. But she insisted that "[t]he specific particulars of that morning are not important" because she and her husband spent "every weekend" together, from the time they woke up until the time they went to bed. *Id.* She continued that "to the best of [her] knowledge," she and Burke spent the morning of the robbery "like every weekend [they] shared together," explaining that they "probably had breakfast [and] did things around the house (i.e. cleaning, yard work, grocery shopping etc)." *Id.* She emphasized that she was "confident and sure beyond doubt that he was home because that was the weekend of [her] birthday." *Id.* She concluded, "[T]o the best of my knowledge my husband and I awoke together and spent the entire day together, again to the best of my knowledge and recollection he did not arise early, nor did he leave the house, return and got back in the bed we shared." *Id.*

In her second affidavit, Nesbitt described the police officer who interrupted the trial and removed a pistol. She explained that she saw an officer enter the

courtroom carrying a brown paper "evidence bag." *Id.* at 7. According to Nesbitt, the officer sat behind the Assistant State's Attorneys' desk and spoke with at least one of the attorneys. *Id.* Nesbitt insisted that she had no doubt that the jurors saw this interaction because the officer "was closer to them than he was to [Nesbitt]." *Id.* After considering the evidence, the post-conviction trial court granted the State's motion to deny Burke's petition, *id.* at 1, and the state appellate court affirmed, rejecting Burke's ineffective-assistance claims, *id.* at 8-16.

Burke has now filed a federal habeas petition in this Court. In his petition, he raises two claims. First, Burke argues that the State introduced insufficient evidence to convict him of subsection-(a)(1) armed robbery because it did not prove that Burke used a weapon other than a firearm. Habeas Pet. at 21. Second, Burke reasserts his claims for ineffective assistance of trial counsel. *Id.* at 26-27. The State has asked this Court to deny Burke's petition. R. 17, State's Answer at 25.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks and citation omitted). A habeas petitioner must fully and fairly present his federal claims through one complete round of the state appellate review process before filing a federal habeas

petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner has failed to properly assert his federal claims at each level of state review, his claims are procedurally defaulted. *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). A claim is also procedurally defaulted when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, making the state court's refusal to adjudicate the claim an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). Either way, procedural default precludes federal-court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). A habeas petitioner may overcome procedural default, however, either by demonstrating cause for the default and actual prejudice from the default, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Thus, procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances.

If the petitioner successfully runs the procedural-default gauntlet for a particular claim, then a federal court can at least consider the merits of that federal habeas claim. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that

reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Alternatively, under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 413. But even if a federal court independently concludes that the relevant state-court decision applied clearly established federal law erroneously, still the writ does not necessarily issue; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

### III. Analysis

In responding to Burke's habeas petition, the State concedes that Burke has exhausted his state-court remedies and that Burke's claims are timely and not barred by retroactivity principles. *See* State's Answer at 14. It is therefore time to review the merits of each habeas claim.

### A. Sufficiency of the Indictment

Burke first asserts that the State introduced insufficient evidence to convict him of subsection-(a)(1) armed robbery because it did not establish that he used a weapon other than a firearm. Habeas Pet. at 21. According to Burke, the State did

not satisfy the elements of subsection (a)(1) because the only weapon of which there was evidence at trial was a firearm, *id.*, a point which the appellate court acknowledged, *Burke*, 840 N.E.2d at 283 ("Clearly, the State's proof did not satisfy the[] elements [of subsection (a)(1)]."). After Burke raised this issue on direct appeal, the state appellate court rejected his argument, viewing it instead as a challenge to whether the indictment gave Burke sufficient notice of the elements of subsection (a)(2) (armed robbery with a firearm). *Id.* Burke argues that this finding was also an error. *See* Habeas Pet. at 22 (citing 28 U.S.C. § 2254(d)(2)). He claims that the state appellate court unreasonably determined that the State intended the jury to decide whether Burke violated subsection (a)(2), not subsection (a)(1), and that the citation to (a)(1) was simply a mistake.[4] *Id.*

At the outset, the state appellate court was not wrong in viewing Burke's challenge as one of the sufficiency of the *indictment*, not sufficiency of the *evidence*. Quite reasonably, the appellate court concluded that the State "mistakenly cited" subsection (a)(1). *Burke*, 840 N.E.2d at 283; *see also id.* at 283-84 ("[I]t is apparent

---

[4]Burke also argues that the jury instructions were incorrect because the instructions did not include the (a)(1) requirement that the dangerous weapon be other than a firearm. *See* Habeas Pet. at 24-25. Burke properly flagged this issue for the state appellate court on direct appeal. *See* Appellant's Br. at 36-39, *Burke*, 840 N.E.2d 281 (No. 2-03-1127), *available at* R. 18-16, State's Exh. S. The state appellate court reasonably rejected the argument for the same grounds that refute Burke's argument that the indictment was insufficient, as discussed below. It is worth nothing here, too, that Burke did not raise the non-objection to the jury instructions as a basis for an additional ineffective-assistance argument in his federal habeas petition. *See* Habeas Pet. at 26-32. Nevertheless, even if Burke had raised this issue, he would not be able to demonstrate prejudice as required under *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (explaining that to establish prejudice, petitioners must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). In this case, had Burke's lawyer objected to the jury instruction, the case would not have ended any differently. Instead, the State likely would have just fixed the typo in the indictment.

that the State intended the jury to decide whether defendant violated subsection (a)(2), not subsection (a)(1) . . . ."). As the appellate court recognized, the State abandoned Count II of the indictment so that the indictment would track the language used in the jury instructions, not because the State believed that it had failed to prove that Burke had used a gun. *See id.* at 283 (noting that the State opted to proceed under Count I alone simply because "all the instructions [the State] drafted relate[d] to the dangerous weapon"). Indeed, both counts of the indictment referenced a firearm, but only Count I used the phrase "dangerous weapon," like in the jury instructions. *Compare id.* (noting that Count I alleged that Burke committed armed robbery "with a dangerous weapon, a gun," while Count II alleged that Burke committed armed robbery "with a firearm"), *with* Jury Instructions at 13. Thus, it was reasonable for the state court to find that the State charged Burke with armed robbery with a firearm—under either count—and that its citation to subsection (a)(1) in Count I was simply a mistake.

Burke has not presented clear and convincing evidence to rebut this finding.[5] *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Instead, the only evidence that Burke points to is the indictment itself. *See* Habeas

---

[5]Burke contends that an evidentiary hearing would enable him to prove that the factual allegations in his petition are true and entitle him to federal habeas relief. Habeas Pet. at 25. But Burke fails to articulate what other evidence he would seek to offer at such a hearing. This Court is therefore confined to the record that the state court reviewed in making its finding because Burke has not identified anything that would trigger an evidentiary hearing under § 2254(e)(2).

Pet. at 21-22. The charging language in the indictment, however, actually contradicts Burke's argument. Although the indictment cites subsection (a)(1), it explicitly states that Burke was charged with committing armed robbery with "a gun." *Burke*, 840 N.E.2d at 283 (quoting the indictment). Setting aside the citation error, the charging language was not (a)(1) language; it was very clearly (a)(2) language.

There was also no doubt that the dangerous weapon in question was a gun. As the state appellate court observed, the State did not offer evidence of any other weapon. *Id.* The appellate court even noted that the evidence that Burke robbed Jordan *with* a firearm was "overwhelming and uncontested." *Id.* at 284. What's more, the State abandoned Count II only *after* all the evidence about the gun had already been admitted into evidence. *Id.* at 283. And even after it dropped Count II, the State continued to reinforce in closing arguments that it was prosecuting Burke for armed robbery with a firearm by repeatedly referencing the gun that he used. *See, e.g.*, R. 18-14, State's Exh. N at C679-85, C690, C697, C711-12, C716-19 (referencing the gun twenty times in the State's closing argument). Neither side argued to the jury that it had to find that Burke used a weapon other than a firearm, and the jury instructions simply stated that the jury must find that Burke used a dangerous weapon. *See Burke*, 840 N.E.2d at 283 n.1; *see also* Jury Instructions at 13. In the end, what was in dispute was not whether the robber had used a gun, but whether the robber—who definitely used a gun—was Burke. Altogether, this demonstrates that the state appellate court reasonably analyzed

Burke's petition as challenging the sufficiency of the indictment, not the sufficiency of the evidence.

Properly viewed in this way, Burke's sufficiency-of-the-indictment argument fails to justify habeas relief. Under the Sixth Amendment, defendants in criminal prosecutions have the right "to be informed of the nature and cause of the accusation" against them. U.S. Const. amend. VI. To satisfy this constitutional notice requirement, a state-court indictment[6] must "first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 118 (1974); *see also United States v. Phillips*, 645 F.3d 859, 861 (7th Cir. 2011) (citing *Hamling*). In short, *Hamling* "looks at matters objectively: did the charge enable an innocent accused to mount an adequate defense?" *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992).

This is the exact rule that the state appellate court applied, even if it did not cite *Hamling* directly. *Cf. Early v. Packer*, 537 U.S. 3, 8 (2002) (explaining that state courts reviewing post-conviction petitions need not cite controlling Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). Applying Illinois law, the state appellate court observed that

---

[6]The Fifth Amendment right to a grand-jury indictment on a federal felony is not incorporated against the States, *Albright v. Oliver*, 510 U.S. 266, 272 (1994), but the Sixth Amendment still requires notice of the charge against an accused, and the indictment is supposed to fulfill the notice requirement in Illinois.

> Where a defendant challenges the sufficiency of an indictment or information for the first time on appeal, a reviewing court need only determine whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to prepare his or her defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.

*Burke*, 840 N.E.2d at 284 (quoting *People v. Maggette*, 747 N.E.2d 339, 346 (Ill. 2001) (internal quotation marks omitted)); *see also id.* (quoting *People v. Witt*, 592 N.E.2d 402, 408 (Ill. App. Ct. 1992) ("Where the language of the indictment sufficiently informs a defendant of the charges against him, and defendant cannot demonstrate any prejudice resulting from an incorrect statutory citation, the defect is formal and does not warrant reversal.")). The state appellate court applied the correct legal rule to Burke's challenge, so its decision was not contrary to clearly established Supreme Court law.[7] Burke has not met the first prong of AEDPA.

The question then becomes whether the state appellate court reasonably applied the rule from *Hamling*. The appellate court reasoned that at the time the State dismissed Count II, it would have been unreasonable for Burke to believe that the State intended to prove that he had committed the robbery with a dangerous

---

[7]Burke argues that the state appellate court's decision was also contrary to three other Supreme Court cases. *See* Habeas Pet. at 21-23. But two of these cases dealt with sufficiency of the evidence, not sufficiency of the indictment. *See United States v. Gaudin*, 515 U.S. 506, 522-23 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."); *In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). And *Cole v. Arkansas*, 33 U.S. 196, 201 (1948), simply incorporated the Sixth Amendment's notice requirement into the Fourteenth Amendment, making it applicable in state prosecutions. *Cole* also implies that courts should analyze the charging language of an information or an indictment, not a statutory citation, to determine whether it provides sufficient notice. *See id.* at 200 (noting that the charging language in the information used the wording from section 2 of an Arkansas law, not section 1).

weapon *other than* a firearm. *Id.* The charging language in the indictment underscores that the state court's conclusion was reasonable. Although it cited subsection (a)(1), Count I contained all the elements of subsection (a)(2). *Id.* Most importantly, Count I clearly alleged that Burke committed robbery "while armed with a dangerous weapon, *a gun.*" *Id.* at 283 (emphasis added). Given the clear charging language, it was not unreasonable for the state court to conclude that the indictment gave Burke sufficient notice of the charges against him and enabled him to mount an adequate defense.

Most telling, there is sufficient record evidence suggesting that Burke did, in fact, interpret the indictment as charging him with armed robbery *with* a firearm and that the State's mistaken citation to subsection (a)(1) did not prejudice him. *Cf.* *United States v. Lowe*, 860 F.2d 1370, 1381 (7th Cir. 1988) ("Under Rule 7(c) of the Federal Rules of Criminal Procedure, a miscitation . . . is harmless error and cannot be grounds for dismissing the indictment or reversing the conviction unless the defendant is misled by the erroneous reference and prejudiced thereby." (citing *United States v. Hutcheson*, 312 U.S. 219, 229 (1941))). First, Burke's lawyer questioned the final witness about the gun that Burke used during the robbery, even after the State had dropped Count II. *See* State's Exh. N at C662-64. And then in the defense's closing arguments, Burke's lawyer again referenced the gun. *See id.* at C700-01. In short, it was reasonable for the appellate court to conclude that Burke was not prejudiced by the State's citation error in the indictment. Burke's

first habeas claim therefore fails because the state appellate court did not unreasonably apply *Hamling*.

### B. Ineffective Assistance of Trial Counsel

In his second habeas claim, Burke argues that his trial counsel was constitutionally ineffective for (1) failing to present alibi evidence; (2) failing to present evidence to rebut the State's fingerprint evidence; (3) failing to hire a fingerprint expert; and (4) failing to object when a weapon not admitted into evidence was removed from an evidence bag in the jury's presence. Habeas Pet. at 26-27. Had his attorney submitted the alibi and rebuttal fingerprint evidence in particular, Burke claims that it would have exculpated him by excluding him from the crime scene. *Id.* at 26-27, 31.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. To receive habeas relief on the merits of his ineffective-assistance-of-counsel claim, Burke must meet the familiar two-prong, performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, he must show that his trial counsel's performance was deficient and that prejudice resulted. *Id.* at 687. For the performance prong, the question is whether "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. On prejudice, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Burke must satisfy *both* prongs of the standard to be entitled to habeas relief. *Id.* at 687.

Judicial review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. On federal habeas review, this inquiry is *doubly* deferential: not only must the Court presume that "the challenged action might be considered sound trial strategy," *id.* (internal quotation marks and citation omitted), but under AEDPA, this Court must also defer to the state court's application of *Strickland* unless it is objectively unreasonable,[8] *see Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

On the first prong, reasonableness of performance, the state appellate court did not determine whether any of Burke's trial counsel's conduct fell below an objective standard of reasonableness. *See Burke*, No. 2-08-0135, slip op. at 11-16 (evaluating only the prejudice prong of the standard). When analyzing Burke's argument about counsel's failure to call Burke's wife as an alibi, however, the appellate court did briefly consider the performance prong. *See id.* at 11. But because the record was not sufficient, the state court did not decide the issue one way or the other. *See id.* ("Trial counsel's decision not to present Nesbitt's testimony may have been strategic; however, it may have been incompetence as well. We cannot make that determination on this record."). Instead, it dismissed all of

---

[8]Burke concedes that the state appellate court correctly identified the governing *Strickland* standard in its post-conviction review. *See* Habeas Pet. at 27; *see also Burke*, No. 2-08-0135, slip op. at 9 ("To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." (citing *Strickland*, 466 U.S. at 687)). Therefore, the only question for this Court to consider is whether the appellate court's application of *Strickland* was reasonable.

Burke's arguments on the prejudice prong alone. *Cf. Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Turning to the prejudice prong, the state appellate court concluded that Burke suffered no prejudice resulting from his trial counsel's conduct on any of the four claims that Burke identified.[9] First, the court held that there was no prejudice stemming from counsel's failure to call Nesbitt (Burke's wife) as an alibi witness. *Burke*, No. 2-08-0135, slip op. at 13. This was a reasonable conclusion. Although Nesbitt's testimony was relevant, it was far too generalized to reasonably tip the balance back toward Burke, especially after the evidence that the State had offered against him at trial. Most problematic, Nesbitt's affidavit did not provide "specific particulars" about the weekend of the robbery. *Id.* at 6. Instead, she only described what they generally did every weekend and what they "probably" did that specific weekend. *Id.* And Nesbitt failed to provide any corroborating evidence to back up her testimony, such as grocery store receipts or the like. On top of the too-general

_____

[9]On federal habeas review, Burke argues that the state appellate court erred by considering his ineffective-assistance claims one by one instead of cumulatively. *See* Habeas Pet. at 32; R. 24, Pet'r's Reply Br. at 26, 28-29. The Court will not address this argument for two reasons. First, Burke does not adequately develop this argument on federal habeas review, having cited no Supreme Court authority supporting his cumulative-error argument. Second, because Burke did not raise this argument during state post-conviction review, he has not raised it "at each and every level in the state court system" as is required to exhaust that claim. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *see also Boerckel*, 526 U.S. at 845. The Seventh Circuit does not appear to have ruled on whether a cumulative-error claim must be independently presented to state courts as a stand-alone claim to be properly exhausted, or if it is enough to just exhaust each constituent claim. The weight of the Circuit precedent, however, runs strongly in favor of requiring cumulative error to be specifically raised in state court in order to be exhausted. *See Dixon v. Hardy*, No. 10 C 06727, 2013 WL 5518902, at *4 n.3 (N.D. Ill. Oct. 4, 2013) (listing cases).

nature of the testimony, Nesbitt, as Burke's wife, could easily have been impeached for family bias. *See id.* at 12.

Weighing against Burke was all of the evidence that the State presented at trial. First, the state appellate court concluded that Jordan, even after "rigorous cross-examination," "unequivocally identified [Burke] as the offender." *Id.* at 11. Although Burke argues that Jordan's eyewitness identification was unreliable, *see* Pet'r's Reply Br. at 21-22, the record backs up the appellate court's conclusion. Jordan saw Burke's face from about a foot away when he initially approached her while she was unlocking the Currency Exchange door. *See* R. 18-13, State's Exh. M at C463-64, C479. She was also able to look at him the entire time they were in the lobby area. *Id.* at C480. Jordan saw Burke again through the glass separating the secured work area from the lobby. *Id.* at C482-83. At that point, Burke was facing her, and Jordan was able to get a "good look" at his face. *Id.* at C483. What's more, after *excluding* two suspects that the police presented to her shortly after the robbery, Jordan quickly and positively identified Burke in a photographic lineup, explaining that she would "never forget his face." *Burke*, No. 2-08-0135, slip op. at 3-4. Finally, the appellate court did not just rely on Jordan's testimony or identification when concluding that Burke suffered no prejudice. The court also emphasized that the State had presented expert testimony establishing that Burke's fingerprints were found inside the security door, an area that was not accessible to the general public. *Id.* at 11-12. In light of the strong evidence outweighing Nesbitt's generalized testimony and potential bias, the court concluded

that there was not a reasonable probability that Burke would have been acquitted if Nesbitt had testified. *Id.* at 12-13. This conclusion was not objectively unreasonable.

Second, the appellate court also held that Burke "suffered no prejudice" as a result of trial counsel's failure to present evidence explaining why Burke's fingerprints were found at the Currency Exchange. *Id.* at 13-14. Burke argued that his counsel should have presented evidence that he worked near the Currency Exchange and visited it frequently before the robbery. *Id.* As the state court noted, this evidence may have explained why Burke's fingerprints were found in the *common area* of the Currency Exchange, but it did not explain why his prints were found *inside* the security door. *Id.* at 14. On top of this, Burke's conviction was supported not only by fingerprint evidence, but also by eyewitness identification. *Id.* As a result, it was not unreasonable for the appellate court to conclude again that trial counsel's failure to present this evidence did not prejudice Burke.

Next, the appellate court also held that Burke suffered no prejudice arising from his counsel's failure to hire a fingerprint expert. *Id.* at 15. Burke claimed that he gave trial counsel money to hire a fingerprint expert to dispute the evidence that his prints were recovered from inside the security door (the part not accessible to the public). *Id.* at 14. But the appellate court explained that these allegations were insufficient to conclude that Burke suffered prejudice. First, the court emphasized that Burke did not allege what evidence his own expert would have presented. *Id.* at 15. What's more, the court also noted that Burke did not even allege that the State's fingerprint evidence was flawed. *Id.*

On federal habeas review, there is nothing in the record showing that the appellate court's conclusion was unreasonable, and Burke's citations to the record do not undermine or impeach the State's expert. Burke emphasizes that Keith, the State's expert, was unable to match Burke's prints to a set of palm prints collected from the Currency Exchange. *See* Pet'r's Reply Br. at 23-24 (citing R. 31-1, State's Exh. W at C599, C609-15). But Burke does not even make a conclusory argument that Keith's analysis was sloppy or wrong as to Burke's fingerprints found inside the security door. Instead, the record readily explains why Keith was unable to match Burke's palm prints to the prints lifted from the scene: they simply were not Burke's. The only palm prints Keith had for comparison were from Burke, and they did not match the palm prints lifted from the Exchange. *See* State's Exh. W at C614. Keith noted that he did not have the palm prints of the investigating officers who were at the scene, and he elaborated that it was not his job to request additional prints or to determine how to run the investigation in order to eliminate additional prints. *Id.* at C614-15. The Court is confined to the record from the state court proceedings, and Burke has not demonstrated good cause to further develop the record. Thus, on this record, the appellate court's conclusion was reasonable.

Finally, the appellate court rejected Burke's claim that he was prejudiced by his trial counsel's failure to object when a police officer removed a pistol from an evidence bag in the jury's presence.[10] *Burke*, No. 2-08-0135, slip op. at 15-16. Burke

---

[10]The appellate court also noted that Burke forfeited this claim by failing to cite any authority in support of it. *See Burke*, No. 2-08-0135, slip op. at 15 (citing Illinois Supreme Court Rule 341(h)(7)); *see also Cone*, 556 U.S. at 465 (explaining that a claim is procedurally defaulted when a petitioner fails to raise his federal claims in compliance with

contends that the State intentionally had the police officer enter the courtroom and that the gun was from a different pending criminal case against him in Chicago. Habeas Pet. at 18, 27. The appellate court reasonably concluded that Burke was not prejudiced by his counsel's failure to object.[11] It first noted that, even assuming the jurors saw the gun, there was no evidence that the jurors were influenced by it because both Burke and Nesbitt's affidavits were based on speculation alone. *Burke*, No. 2-08-0135, slip op. at 15-16. To support his claim on state post-conviction review, Burke relied primarily on the armed-robbery conviction itself to argue that the jurors were influenced by the gun. *See id.* at 16. Moreover, Burke presented no arguments or other evidence to overcome the weight of the admissible evidence against him.[12] *Id.* And it is quite possible that objecting to the gun would have drawn even more attention to the gun and alerted jurors that it was from another

relevant state procedural rules). Despite this procedural error, however, the appellate court went on to address the merits of Burke's claim, so this Court will, too.

[11]To be clear, Burke has raised an ineffective-assistance claim, not a due-process claim. *See* Habeas Pet. at 26; *see also* Appellant's Br. at 17, 22, 24-25, *Burke*, No. 2-08-0135. Burke is arguing that the error here was his counsel's failure to object, not the denial of his right to a fair trial. Burke did raise a due-process challenge in his post-conviction petition. *See* Am. Post-Conviction Pet. at 49, *People v. Burke*, No. 01 CF 2928 (Ill. Cir. Ct. Mar. 16, 2007), *available at* R. 18-16, State's Exh. R. But Burke abandoned this argument on appeal. *See* Appellant's Br. at 17, *Burke*, No. 2-08-0135. The state post-conviction appellate court therefore incorrectly characterized Burke's appeal as raising a due process claim. *See Burke*, No. 2-08-0135, slip op. at 1, 5. This mischaracterization is ultimately harmless, however, because the appellate court's due-process analysis readily translates to an analysis of *Strickland*'s prejudice prong. *See id.* at 16.

[12]Burke again requests an evidentiary hearing to allow him to develop this ineffective-assistance claim. *See* Habeas Pet. at 32. But the state appellate court already reviewed and rejected Burke's and Nesbitt's affidavits and even overlooked any inconsistencies in them when the court assumed that the jury saw the gun. *Burke*, No. 2-08-0135, slip op. at 15. Moreover, under the Illinois Rules of Evidence, Burke would not be able to ask jurors what effect seeing the gun had on their deliberations and the verdict. *See* Ill. R. Evid. 606(b). Therefore, the Court also denies Burke's request for an evidentiary hearing to develop this final ineffective-assistance claim.

case involving Burke. Finally, as the appellate court observed, "the jury was properly instructed that the evidence it should consider 'consists only of the testimony of the witnesses and the exhibits which the Court has received.'" *Id.* Given this jury instruction and the other evidence in the record, it was not unreasonable for the appellate court to conclude that Burke was not prejudiced by his counsel's failure to object to the police officer's removing the gun from the evidence bag in the jury's presence.

In sum, it was reasonable for the state appellate court to conclude that Burke suffered no prejudice as a result of any of his trial counsel's conduct. Burke's second, and last, habeas claim therefore fails as well.

## IV. Conclusion

For the reasons discussed above, Burke's habeas petition [R. 1] is denied.

If Burke seeks to appeal the denial of his habeas petition, he must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the circuit justice or judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted). For the reasons discussed above, Burke has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should been resolved differently or determine that Burke deserves encouragement to proceed further with his habeas claims. *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The state courts' decisions on all of Burke's claims were well within the deference owed to state courts under AEDPA. The Court therefore declines to issue a certificate of appealability.

ENTERED:


      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 28, 2014